## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIMITRY KUPERSCHMIDT,** | : | **Civil No. 1:21-cv-00363** |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **JEFF ANGRADI, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

The instant petition for writ of habeas corpus filed by the petitioner, Dimitry Kuperschmidt, was reassigned to the undersigned on November 1, 2023. This petition involves a unique set of facts and circumstances arising out of a fraudulent voting scheme in a 2014 Board of Directors election at the private community called Wild Acres. In May of 2016, following a jury trial, the petitioner, Dimitry Kuperschmidt, was convicted of 190 counts including forgery, identity theft, and criminal conspiracy for conspiring with his co-defendant, Myron Cowher, to cast ballots for historically non-voting property owners of the Wild Acres Community in order to influence the election results.

Our initial review of this petition revealed that the primary issue raised by the parties was that of exhaustion and procedural default. Specifically, it was undisputed

1

that, at the state court level, Kuperschmidt had filed a timely petition for post-conviction relief under the Post-Conviction Relief Act (PCRA), but, because he served less than one year in custody, he no longer met the custody requirement of the PCRA at the time the trial court considered his petition and thus it was dismissed. While the respondents argued this constituted a procedural default, the petitioner's position was that, in circumstances where the habeas petitioner has filed a timely petition for relief in federal court and is precluded from seeking state court relief due to lack of custody, it has long been held that exhaustion is excused. Since the parties' initial briefing did not reach the merits of Kuperschmidt's ineffective assistance of counsel claims, we ordered supplemental briefing so we could benefit from a complete review of the record of proceedings.

After our independent review of the full record of the state court proceedings, and upon consideration of the supplemental briefing by the parties, although we agree Kuperschmidt's inability to meet the PCRA custody requirement alone does not bar him from habeas relief, his failure to comply with other state procedural rules in filing his PCRA appeal resulted in his claims being procedurally defaulted. Moreover, a review of the merits of his claims reveals that he has failed to raise any claim that rises to a constitutional violation warranting federal intervention. Accordingly, for the reasons set forth below, this petition will be denied.

II.    <u>**Statement of Facts and of the Case**</u>

The factual background of the instant petition was summarized by the trial court in considering the PCRA petition as follows:

> Dmitry Kuperschmidt ("Petitioner") was charged with two hundred seventeen (217) counts related to a fraudulent voting scheme in a 2014 election held by the Wild Acres Community Association. In particular, the fraudulent acts involved filling out election ballots of S.O.S. property owners in the community. Following trial, the jury returned a verdict of guilty on one hundred ninety (190) counts. The Petitioner was found not guilty on twenty-seven (27) counts for the offenses of Identity Theft, Tampering with Records or Identification, and Forgery. The Defendant's original sentencing took place on September 8, 2016, during which he received a total aggregate sentence of not less than twelve (12) months not more than twenty-nine (29) months of incarceration in a state prison.

(Doc. 41-4, at 1-2).

Kuperschmidt was tried jointly with his co-conspirator in the election fraud scheme, Myron Cowher. At trial, the prosecution introduced recordings of wiretapped conversations between the director of operations of Wild Acres, Robert DePaolis, who had informed the Pennsylvania State Police that Kuperschmidt's co-defendant, Myron Cowher, was planning on forging ballots in the upcoming election, and Cowher and Kuperschmidt. (Doc. 41-1, at 115-19). State Trooper Frank Orlando, also testified at length about the investigation. (<u>Id.</u>, at 99-208).

The Pennsylvania Superior Court aptly summarized the procedural history following Kuperschmidt's conviction:

On direct appeal, this Court reversed the conviction for criminal use of a communication facility, vacated the judgement of sentence and remanded the matter for resentencing. See Commonwealth v. Kuperschmidt, 185 A.3d 1093 (Pa. Super. 2018) (unpublished memorandum), appeal denied, 647 Pa. 313, 189 A.3d 378 (2018). On November 1, 2018, the trial court resentenced Appellant and imposed the same aggregate sentence of 12 to 29 months' imprisonment. Once again, Appellant appealed and this Court vacated the judgment of sentence and remanded for resentencing, holding that the trial court imposed an illegal sentence on one count of attempted identity theft, where the minimum sentence for that crime exceeded one-half of the maximum sentence. See Commonwealth v. Kuperschmidt, 221 A.3d 312 (Pa.Super. 2019) (unpublished memorandum), appeal denied, ___ Pa. ___, 234 A.3d 400 (2020). The trial court resentenced Appellant on July 17, 2020, maintaining an aggregate sentence of 12 to 29 months' imprisonment.

(Doc. 41-6, at 2).

According to the petitioner, his period of incarceration and subsequent probation expired on February 28, 2021, less than a year after his final sentence was imposed. (Doc. 7, ¶ 3). The relative brevity of the petitioner's custodial period following the multiple appeals of his sentence and final disposition of his case was problematic in his quest for post-conviction relief. Attempting to obviate any question concerning his custody status and habeas corpus jurisdiction, Kuperschmidt filed the instant petition for writ of habeas corpus on February 6, 2021, and subsequently sought a stay and abeyance of these habeas proceedings pursuant to Rhines v. Weber, 544 U.S. 269 (2005), to exhaust his remedies in State court before

pursuing habeas relief in this Court. The respondents did not object to this motion, and it was granted on July 6, 2021. (Docs. 7, 8, 14, 18).

Meanwhile, Kuperschmidt sought to exhaust his remedies in state court, filing a timely counseled PCRA petition on February 25, 2021. (Doc. 41-3). As the Pennsylvania Superior Court summarized:

> On March 9, 2021, the PCRA court issued notice of its intent to dismiss the petition without a hearing per Pa.R.Crim.P. 907. Specifically, the court noted that Appellant was not serving a sentence of imprisonment, probation, or parole at the time the notice was issued and ineligible for PCRA relief. Appellant did not respond to the Rule 907 notice and the court dismissed the PCRA petition on March 29, 2021.
>
> On April 26, 2021, Appellant timely filed a *pro se* notice of appeal. On the same day, the PCRA court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied on May 14, 2021. Appellant's counsel filed a motion to withdraw on August 2, 2021, which the court granted on September 1, 2021. On October 12, 2021, Appellant filed a *pro se* appellate brief with this Court.

(Doc. 41-6, at 2-3).

The Pennsylvania Superior Court subsequently dismissed Kuperschmidt's appeal of his PCRA petition, citing a series of substantial defects in his brief which failed to comply with the court's procedural rules and precluded meaningful review. (Id., at 7-8). Specifically, the Superior Court noted that Kuperschmidt's brief did not identify the specific issues he wished to raise on appeal, lacked a statement of jurisdiction, relevant standard and scope of review, and a comprehensible argument

section. (Id.) The Superior Court also noted in passing in a footnote that "we agree with the PCRA court that Appellant is not eligible for PCRA relief where he is no longer serving a sentence." (Id., at 8 n.4). The Pennsylvania Supreme Court denied allowance of appeal on June 6, 2022. (Doc. 47, at 3).

Following the termination of Kuperschmidt's state court proceedings, the Court lifted the stay and ordered briefing on the instant habeas petition. (Doc. 20). The Court then ordered supplemental briefing of the merits of Kuperschmidt's petition on April 5, 2024. (Doc. 36). The petition is now fully briefed and ripe for disposition. (Doc. 21, 28, 32, 41, 47). In his petition, Kuperschmidt claims he was deprived of effective assistance of counsel at trial in violation of the Sixth and Fourteenth Amendments. The factual allegations in his petition relate to the failure of trial counsel to object to certain hearsay conversations that were introduced as evidence at trial, among other failures. The respondents' primary argument is that Kuperschmidt's PCRA petition was procedurally defaulted, barring him from federal habeas review. They also argue that his constitutional claims do not warrant habeas relief. For his part, the petitioner argues that he should be excused from the exhaustion requirement since he is precluded from pursuing State relief, despite still being eligible for habeas relief post-release from custody. As the petitioner points out, this gap makes PCRA relief, and thus exhaustion, challenging for those with short sentences.

But, as the respondents point out, the Superior Court's decision to dismiss his PCRA appeal was based not upon the fact that Kuperschmidt was no longer in custody, but due to multiple substantive deficiencies in his brief which precluded the court from meaningfully reviewing the issues. The Pennsylvania Superior Court having been unable to review the issues raised by Kuperschmidt similarly significantly constrains this Court from conducting the meaningful review required to evaluate this petition and thus fits the definition of a procedural default. Moreover, having benefitted from the supplemental briefing of the parties as to the merits of Kuperschmidt's claims, we find that the discretionary evidentiary rulings he challenges do not rise to the level of a constitutional infraction and seem to be in accord with the law of Pennsylvania. Thus, given the deferential standard of review that applies to habeas petitions like Kuperschmidt's, we will deny his petition.

## III.   <u>Discussion</u>

### A. <u>State Prisoner Habeas Relief–The Legal Standard.</u>

#### (1) <u>Substantive Standards</u>

In order to obtain federal habeas corpus relief, a state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on

the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State;
..........
(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254(a) and (b).

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, a petition must satisfy rigorous substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct that violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See e.g., Reed v. Farley,

512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401–02 (3d Cir. 2004).

### (2) Deference Owed to State Courts

These same principles which inform the standard of review in habeas petitions and limit habeas relief to errors of a constitutional dimension also call upon federal courts to give an appropriate degree of deference to the factual findings and legal rulings made by the state courts in the course of state criminal proceedings. There are two critical components to this deference mandated by 28 U.S.C. § 2254.

First, with respect to legal rulings by state courts, under § 2254(d), habeas relief is not available to a petitioner for any claim that has been adjudicated on its merits in the state courts unless it can be shown that the decision was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; see 28 U.S.C. § 2254(d)(l); or (2) was "based upon an unreasonable determination of the facts." See 28 U.S.C. § 2254(d)(2). Applying this deferential standard of review, federal courts frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts. See Rice v. Collins, 546 U.S. 333, 338–39 (2006); see also

Warren v. Kyler, 422 F.3d 132, 139–40 (3d Cir. 2006); Gattis v. Snyder, 278 F.3d 222, 228 (3d Cir. 2002).

In addition, § 2254(e) provides that the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous. See 28 U.S.C. § 2254(e)(1). This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made in the course of criminal proceedings. See, e.g., Maggio v. Fulford, 462 U.S. 111, 117 (1983) (per curiam); Demosthenes v. Baal, 495 U.S. 731, 734–35 (1990). This principle applies to state court factual findings made both by the trial court and state appellate courts. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006). Thus, we may not re-assess credibility determinations made by the state courts, and we must give equal deference to both the explicit and implicit factual findings made by the state courts. Weeks v. Snyder, 219 F.3d 245, 258 (3d Cir. 2000). Accordingly, in a case such as this, where a state court judgment rests upon factual findings, it is well-settled that:

> A state court decision based on a factual determination, ..., will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceeding. Miller–El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 154 L.Ed.2d 931 (2003). We must presume that the state court's determination of factual issues was correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Campbell v. Vaughn, 209 F.3d 280, 285 (3d Cir.2000).

Rico v. Leftridge–Byrd, 340 F.3d 178, 181 (3d Cir. 2003). Applying this standard of review, federal courts may only grant habeas relief whenever "[o]ur reading of the PCRA court records convinces us that the Superior Court made an unreasonable finding of fact." Rolan, 445 F.3d at 681.

### (3) Ineffective Assistance of Counsel Claims

These general principles apply with particular force to habeas petitions that are grounded in claims of ineffective assistance of counsel. It is undisputed that the Sixth Amendment to the United States Constitution guarantees the right of every criminal defendant to effective assistance of counsel. Under federal law, a collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in order to survive. Specifically, to prevail on a claim of ineffective assistance of counsel, a petitioner must establish that: (1) the performance of counsel fell below an objective standard of reasonableness; and (2) that, but for counsel's errors, the result of the underlying proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 691-92 (1984). A petitioner must satisfy both of the Strickland prongs in order to maintain a claim of ineffective counsel. George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001).

At the outset, Strickland requires a petitioner to "establish first that counsel's performance was deficient." Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). This

threshold showing requires a petitioner to demonstrate that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. Id. Additionally, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Id. However, in making this assessment "[t]here is a 'strong presumption' that counsel's performance was reasonable." Id. (quoting Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996)).

But a mere showing of deficiencies by counsel is not sufficient to secure habeas relief. Under the second Strickland prong, a petitioner also "must demonstrate that he was prejudiced by counsel's errors." Id. This prejudice requirement compels the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." Id.

Thus, as set forth in Strickland, a petitioner claiming that his criminal defense counsel was constitutionally ineffective must show that his lawyer's "representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

12

perspective at the time." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 689). The petitioner must then prove prejudice arising from counsel's failings. "Furthermore, in considering whether a petitioner suffered prejudice, '[t]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" Rolan, 445 F.3d at 682 (quoting Strickland, 466 U.S. at 696) (internal quotations omitted).

Although sometimes couched in different language, the standard for evaluating claims of ineffectiveness under Pennsylvania law is substantively consistent with the standard set forth in Strickland. See Commonwealth v. Pierce, 527 A.2d 973, 976–77 (Pa.1987); see also Werts v. Vaugh, 228 F.3d 178, 203 (3d Cir. 2000) ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent"). Accordingly, a federal court reviewing a claim of ineffectiveness of counsel brought in a petition under 28 U.S.C. § 2254 may grant federal habeas relief if the petitioner can show that the state court's adjudication of his claim was an "unreasonable application" of Strickland. Billinger v. Cameron, 2010 WL 2632286, at *4 (W.D. Pa. May 13, 2010). In order to prevail against this standard, a petitioner must show that the state

court's decision "cannot reasonably be justified under existing Supreme Court precedent." Hackett v. Price, 381 F.3d 281, 287 (3d Cir. 2004); see also Waddington v. Sarausad, 555 U.S. 179, 190 (2009) (where the state court's application of federal law is challenged, "the state court's decision must be shown to be not only erroneous, but objectively unreasonable") (internal citations and quotations omitted).

This additional hurdle is added to the petitioner's substantive burden under Strickland. As the Supreme Court has observed a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); see also Yarborough v. Gentry, 540 U.S. 1, 6 (2003) (noting that the review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas"). This doubly deferential standard of review applies with particular force to strategic judgment like those thrust upon counsel in the instant case. In this regard, the Court has held that:

> "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id., at 688, 104 S. Ct. 2052. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., at 689, 104 S. Ct. 2052. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id., at 690, 104 S. Ct. 2052.

Knowles v. Mirzayance, 556 U.S. 111, 124, 129 S. Ct. 1411, 1420, 173 L. Ed. 2d 251 (2009). The deference which is owed to these strategic choices by trial counsel is great.

> Therefore, in evaluating the first prong of the Strickland test, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. The presumption can be rebutted by showing "that the conduct was not, in fact, part of a strategy or by showing that the strategy employed was unsound."

Lewis v. Horn, 581 F.3d 92, 113 (3d Cir. 2009) (quoting Thomas v. Varner, 428 F.3d 491, 499-500 (3d Cir. 2005)) (footnote omitted).

## (4) **Procedural Benchmarks – Exhaustion and Procedural Default**

### a. **Exhaustion of State Remedies**

State prisoners seeking relief under section 2254 must also satisfy specific, procedural standards. Among these procedural prerequisites is a requirement that the petitioner "has exhausted the remedies available in the courts of the State" before seeking relief in federal court.  28 U.S.C. § 2254(b).  In instances where a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus.  Whitney v. Horn, 280 F.3d 240, 250 (3d Cir. 2002).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). The Supreme Court has explained that "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation. Rose v. Lundy, 455 U.S. 509, 518 (1982). Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid a federal court in its review of § 2254 petitions. Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995). A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in obtaining state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court." Parker v. Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

Although this exhaustion requirement compels petitioners to have previously given the state courts a fair "opportunity to apply controlling legal principles to the facts bearing upon [the petitioner's] constitutional claim," Picard v. Connor, 404 U.S. 270, 276 (1971), this requirement is to be applied in a commonsense fashion. Thus, the exhaustion requirement is met when a petitioner submits the gist of his federal complaint to the state courts for consideration, without the necessity that the petitioner engage in some "talismanic" recitation of specific constitutional clams. Evans, 959 F.2d at 1230-33. Similarly, a petitioner meets his obligation by fairly presenting a claim to state courts, even if the state courts decline to address that claim. Dye v. Hofbauer, 546 U.S. 1 (2005) (per curiam); Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004).

### b. **Procedural Default**

A necessary corollary of this exhaustion requirement is the procedural default doctrine, which applies in habeas corpus cases. Certain habeas claims, while not exhausted in state court, may also be incapable of exhaustion in the state legal system by the time a petitioner files a federal habeas petition because state procedural rules bar further review of the claim. In such instances:

> In order for a claim to be exhausted, it must be "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999). If a claim has not been fairly

presented to the state courts and it is still possible for the claim to be raised in the state courts, the claim is unexhausted . . . .

If a claim has not been fairly presented to the state courts but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into play.  A procedural default occurs when a prisoner's federal claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule.  Federal courts may not consider the merits of a procedurally defaulted claim unless the default and actual "prejudice" as a result of the alleged violation of the federal law or unless the applicant demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991).

Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002).

"[A] federal court will ordinarily not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus '[o]ut of respect for finality, comity, and the orderly administration of justice.'  This is a reflection of the rule that 'federal courts will not disturb state court judgments based on adequate and independent state law procedural ground.'"  Hubbard v. Pinchak, 378 F.3d 333, 338 (3d Cir. 2004) (citations omitted).  Given these concerns of comity, the exceptions to the procedural default rule, while well-recognized, are narrowly defined.  Thus, for purposes of excusing a procedural default of a state prisoner seeking federal habeas relief, "[t]he Supreme Court has delineated what constitutes 'cause' for the procedural default:  the petitioner must 'show that some objective factor external to

the defense impeded counsel's efforts to comply with the State's procedural rule.'"

Werts v. Vaughn, 228 F.3d 178, 192-93 (3d Cir. 2000) (citations omitted).  Similarly,

when examining the second component of this "cause and prejudice" exception to

the procedural default rule, it is clear that:

> With regard to the prejudice requirement, the habeas petitioner must prove "'not merely that the errors at … trial created the possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  This standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial.  In the context of an ineffective assistance claim, we have stated that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different."

Id. at 193 (citations omitted).

Likewise, the "miscarriage of justice" exception to this procedural bar rule is

also narrowly tailored and requires a credible assertion of actual innocence to justify

a petitioner's failure to comply with state procedural rules.  Hubbard, 378 F.3d at

338.

Procedural bar claims typically arise in one of two factual contexts.  First, in

many instances, the procedural bar doctrine is asserted because an express state court

ruling in prior litigation denying consideration of a habeas petitioner's state claims

on some state procedural ground.  In such a situation, courts have held that:

A habeas claim has been procedurally defaulted when "a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Coleman v. Thompson, 501 U.S. 722, 730, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991). For a federal habeas claim to be barred by procedural default, however, the state rule must have been announced prior to its application in the petitioner's case and must have been "firmly established and regularly followed." Ford v. Georgia, 498 U.S. 411, 423-24, 111 S. Ct. 850, 112 L.Ed.2d 935 (1991). Whether the rule was firmly established and regularly followed is determined as of the date the default occurred, not the date the state court relied on it, Doctor v. Walters, 96 F.3d 675, 684 (3d Cir. 1996), because a petitioner is entitled to notice of how to present a claim in state court.

Taylor v. Horn, 504 F.3d 416, 427-28 (3d Cir. 2007) (citing Ford, 498 U.S. at 423-24).

In other instances, the procedural default arises, not because of an express state court ruling, but as a consequence of a tactical choice by a habeas petitioner, who elects to waive or forego a claim in the course of his state proceedings, and thus fails to fully exhaust the claim within the time limits prescribed by state statute or procedural rules. In such instances the petitioner's tactical choices in state court litigation also yield procedural defaults and waivers of claims federally. See, e.g., Johnson v. Pinchak, 392 F.3d 551 (3d Cir. 2004) (procedural default where petitioner failed to timely pursue state claim); Hull v. Freeman, 991 F.2d 86 (3d Cir. 1993) (same). Accordingly, a petitioner's strategic choices in state court waiving or abandoning state claims may act as a procedural bar to federal consideration of his

claims, unless the petitioner can show either "cause and prejudice" or demonstrate a "fundamental miscarriage of justice."

It is against these legal benchmarks that we assess Kuperschmidt's petition.

## B. **This Petition Should Be Denied.**

### 1. *The Petitioner's Claims Are Procedurally Defaulted.*

The respondents' threshold argument is that this petition is barred from federal habeas review because his claims are procedurally defaulted since they were not fairly presented at the state court level. Indeed, neither the trial court nor the Superior Court addressed the merits of Kuperschmidt's claims in their dismissal of his petition. For his part, the petitioner's primary focus is that he should be excused from the exhaustion requirement since he is precluded from pursuing State relief due to the fact that he is no longer in custody, despite being otherwise eligible for habeas relief post-release from custody. As we previously noted in ordering supplemental briefing on this petition, the requirement that a petitioner be in custody to pursue PCRA relief makes exhaustion challenging for those serving short state sentences. But the Pennsylvania Supreme Court has provided an avenue for post-conviction review by requiring trial courts to address claims of ineffective assistance of counsel even when a defendant is statutorily precluded from subsequent review under the PCRA. See Commonwealth v. Delgros, 183 A.3d 352 (Pa. 2018). Thus,

21

Kuperschmidt has focused on differentiating his case from <u>Delgros</u> in attempting to excuse his procedural default in this case.

As our previous hesitancy to rule on this issue without a more fulsome understanding of the merits of Kuperschmidt's claims demonstrates, we are sympathetic to the idea that the State court's custody requirement may create obstacles in pursuing post-conviction relief for petitioners like Kuperschmidt who serve short sentences. Indeed, while the Third Circuit has explained that "the absence of state corrective process is generally an excuse to the exhaustion requirement, not the application of procedural default," it has also "declined to treat a petitioner's failure to comply with Pennsylvania's custody requirement as a basis for procedural default." <u>Leyva v. Williams</u>, 504 F.3d 357, 369 (3d Cir. 2007) (citing <u>Parker v. Kelchener</u>, 429 F.3d 58, 62 (3d Cir. 2005); <u>Coss v. Lackawanna County District Attorney</u>, 204 F.3d 453, 460 n.8 (3d Cir. 2000), <u>rev'd on other grounds</u> 532 U.S. 394, 121 S.Ct.1567, 149 L.Ed.2d 608 (2001)). As the court of appeals explained in <u>Leyva</u>, "[n]oncompliance with Pennsylvania's custody requirement did not result from any *failure* on the part [of the petitioner], but simply from the expiration of his sentence. This factor was outside [the petitioner's] control and need not form the basis for a default." <u>Id.</u> (emphasis in original). Accordingly, we decline to bar Kuperschmidt from habeas review based solely upon his failure to meet the PCRA's custody requirement.

22

Nonetheless, our review of the full record reveals that Kuperschmidt's argument fails to account for, or excuse, another, more significant and straightforward procedural default: the Superior Court's inability to review Kuperschmidt's claims due to significant defects in his appellant brief. On this score, as previously explained, "[a] procedural default occurs when a prisoner's federal claim is barred from consideration in the state courts by an 'independent and adequate' state procedural rule." Coleman, 501 U.S. at 750. Here, the Pennsylvania Superior Court found that Kuperschmidt's appeal was barred from consideration due to defects in his brief which precluded meaningful review. Specifically, the court explained:

> Instantly, the defects in Appellant's brief are substantial. Appellant did not include a statement of questions presented to identify the specific issues he wishes to raise on appeal. See Pa.R.A.P. 2116(a). Further, Appellant's brief lacks a statement of jurisdiction, statement of the relevant standard and scope of review, and a comprehensible argument section. See Pa.R.A.P. 2111(a), 2114, 2119. Appellant's argument section consists only of a list of bald assertions of alleged errors committed by the PCRA court. Appellant fails to provide any meaningful analysis or citation to relevant authority to demonstrate error in the PCRA court's decision that he was ineligible for PCRA relief because he was not currently serving a sentence of imprisonment, probation, or parole. See Pa.R.A.P. 2119(a); Hardy, supra. Appellant's failure to comply with our procedural rules governing appellate briefs precludes meaningful review and constitutes sufficient grounds to dismiss the appeal. See Pa. R.A.P. 2101; In re Ullman, supra (holding substantial deficiencies in appellant's brief warrant preclusion of judicial review). Accordingly, we dismiss the appeal.

(Doc. 41-6, at 7-8). Thus, while the trial court focused on the custody issue in dismissing his PCRA petition, it was Kuperschmidt's failure to adequately develop his claims at the appellate level that ultimately led to the dismissal of his appeal.[1]

On this score, the Third Circuit has held that claims deemed to be waived by the state court due to a failure to be meaningfully developed are procedurally defaulted. As the court of appeals explained:

> A state procedural rule is "independent" if it is separate from the federal issue. Here, it is beyond dispute that the Superior Court's determination that Petitioner had waived his claims was pursuant to state law, and was separate from the federal issues before it. See Cabrera v. Barbo, 175 F.3d 307, 313 (3d Cir.1999) ("[T]he basis for the state court's rejection of the ineffective assistance of counsel claims was state court procedural default ... Clearly, this disposition was an independent state ground."). Moreover, a state procedural rule is adequate if it was "firmly established and regularly followed" at the time of the alleged procedural default. Ford v. Georgia, 498 U.S. 411, 424, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). To be considered firmly established and regularly followed, "(1) the state procedural rule [must] speak[ ] in unmistakable terms; (2) all state appellate courts [must have] refused to review the petitioner's claims on the merits; and (3) the state courts' refusal in this instance [must be] consistent with other decisions." Nara v. Frank, 488 F.3d 187, 199 (3d Cir.2007). This test is met here.
>
> The requirement that Petitioner must meaningfully develop his arguments on appeal and cite to appropriate authorities has been stated in unmistakable terms by the Pennsylvania Supreme Court, see Commonwealth v. Clayton, 572 Pa. 395, 816 A.2d 217, 221 (2002) ("[I]t is a well settled principle of appellate jurisprudence that undeveloped claims are waived and unreviewable on appeal"), and is

---

[1] In a footnote, the Superior Court also agreed with the PCRA court that Kuperschmidt was not eligible for PCRA relief where he was no longer serving a sentence, but this was decidedly not the primary reason for the dismissal.

embodied in the state's rules of appellate procedure, see Pa. R.A.P. 2119(a). Moreover, the Superior Court refused to consider Petitioner's claims on the merits and its refusal is consistent with other decisions. See Bracey, 795 A.2d at 940 n. 4, Clayton, 816 A.2d at 221. We conclude that the Superior Court's decision was based upon an independent and adequate state law ground. See Nara, 488 F.3d at 199.

Moreover, " 'federal habeas corpus relief does not lie for errors of state law.' " Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)). This remains true even if the state procedural ruling is incorrect. Estelle, 502 U.S. at 71–72, 112 S.Ct. 475; see also Kontakis v. Beyer, 19 F.3d 110, 117 n. 12 (3d Cir.1994) (reminding that "a state court's misapplication of its own law does not generally raise a constitutional claim.") (citation omitted). Thus, even if the Superior Court incorrectly deemed waived certain of Petitioner's ineffective assistance claims—a point Petitioner does not argue here— habeas relief would not be warranted, as it is "well established that a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Taylor v. Horn, 504 F.3d 416, 448 (3d Cir.2007); see also id. (quoting Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)) ("Even assuming the state court failed to follow the law of Pennsylvania, in this federal habeas case, we are limited to deciding whether [the petitioner's] conviction and sentence 'violated the Constitution, laws, or treaties of the United States.' ").

Leake v. Dillman, 594 F. App'x 756, 758–59 (3d Cir. 2014). In this parallel factual scenario, where the Pennsylvania Superior Court found Kuperschmidt failed to develop his claims for meaningful review, this Third Circuit precedent clearly bars Kuperschmidt from seeking habeas relief on these procedurally defaulted claims.

Furthermore, any argument by the petitioner that this procedural default should be excused fails. As the Supreme Court has explained, "[w]here a defendant has procedurally defaulted a claim . . . the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998) (citing Murray v. Carrier, 477 U.S. 478, 485 (1986); Wainwright v. Sykes, 433 U.S. 72, 87 (1977); Smith v. Murray, 477 U.S. 527, 537 (1986)) (internal citations omitted). To excuse the clear procedural defaults cited by the Superior Court which bar habeas review, the petitioner simply states in a footnote that "even if petitioner submitted a brief which completely comported with the Pennsylvania Rules of Appellate Procedure, the Superior Court would have dismissed the PCRA petition on the ground that petitioner was not in custody." (Doc. 47, at 3 n.1). To the extent that the petitioner is arguing in this unsupported footnote that he was not required to develop his arguments in a manner which could be reviewed by the Superior Court because of the trial court's holding that he was not in custody and thus barred from PCRA relief, this argument is both legally and logically flawed. At the outset, it is well settled that the futility of a claim simply cannot constitute cause to excuse a procedural default. Bousley v. U.S., 523 U.S. 614, 623 (1998) ("[F]utility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time."); see also United

States v. De Castro, 49 F.4th 836, 845 (3d Cir. 2022). Moreover, this precedent is supported by the previously discussed policy limiting the availability of habeas relief for procedurally defaulted claims "[o]ut of respect for finality, comity, and the orderly administration of justice" and the well-settled "rule that federal courts will not disturb state court judgments based on adequate and independent state law procedural ground." Hubbard, 378 F.3d at 338. Therefore, we find that the petitioner's failure to comply with the procedural rules which governed his PCRA appeal bar him from federal habeas relief.[2]

---

[2] We acknowledge the Supreme Court's holding in Martinez that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Martinez v. Ryan, 566 U.S. 1, 17 (2012). Indeed, it appears Kuperschmidt filed his appellate brief to support his PCRA petition *pro se*. However, to invoke this narrow exception to excuse a procedural default, "a petitioner must satisfy two factors: that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel is 'substantial,' meaning that it has 'some merit,' and that petitioner had 'no counsel' or 'ineffective' counsel during the initial phase of the state collateral review proceeding." Melecio v. Zaken, No. CV 3:20-2068, 2023 WL 4138258, at *5 (M.D. Pa. June 22, 2023) (citing Martinez, 566 U.S. at 14, 17; Glenn v. Wynder, 743 F.3d 402, 410 (3d Cir. 2014)) (internal citations omitted). Here, Kuperschmidt has not invoked the Martinez exception or attempted to satisfy these two factors. Moreover, as discussed below, his underlying ineffective assistance of trial counsel claims are meritless and it appears he submitted a counseled PCRA petition, but that counsel withdrew during the PCRA appeal. Therefore, no exception to the procedural default applies here.

### *2. The Petitioner's Ineffective Assistance of Counsel Claims Are Meritless.*

Not only do we find Kuperschmidt's claims procedurally defaulted, but his claims also fail as a matter of substance. Kuperschmidt's petition centers around alleged failures of trial counsel which he contends violated his right to counsel under the Sixth and Fourteenth Amendments. Specifically, the petitioner alleges trial counsel was ineffective for failing to object to the admission of certain testimonial evidence, including excessive background information about the investigation by Trooper Orlando and testimony of DePaolis regarding his conversations with co-defendant Cowher. He also alleges that trial counsel was ineffective for informing the jury that Kuperschmidt would testify in his opening statement.

As previously discussed, we employ a doubly deferential standard in examining habeas petitions raising ineffective assistance of counsel, showing deference to the decisions of state courts unless they are either "contrary to" or involved an unreasonable application of clearly established case law; see 28 U.S.C. § 2254(d)(l); or "based upon an unreasonable determination of the facts." See 28 U.S.C. § 2254(d)(2), and in assessing whether counsel's performance was constitutionally deficient, "[t]here is a 'strong presumption' that counsel's performance was reasonable." Id. (quoting Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996)). Although the trial court and the Superior Court were unable to reach the merits of Kuperschmidt's post-conviction claims due to his procedural

28

defaults, on direct appeal, the Superior Court did address Kuperschmidt's objections to the testimony of co-defendant Cowher and his conversations with DePaolis and found that his testimony was admissible. On direct appeal, Kuperschmidt argued that the consolidation of his trial with Cowher deprived him of the opportunity to defend himself against Cowher's hearsay statements to DePaolis that relayed what he had allegedly told Cowher. The Superior Court agreed with the trial court that the joinder of the trials was appropriate, since Cowher and Kuperschmidt were charged as co-conspirators and Kuperschmidt had not suffered any prejudice which required a separate trial. (Doc. 41-2, at 16). The Superior Court also referenced the trial court's determination that Cowher's testimony fell under an exception to the hearsay rule, specifically Pa.R.E. 803(25)(E), which permits the admission of statements made by a co-conspirator during and in furtherance of the conspiracy. As the court explained:

> [O]ur Supreme Court noted that "the out-of-court declarations of one co-conspirator can be admitted against another co-conspirator provided that the declarations were made during the conspiracy and in furtherance of the common design." Coccioletti, 493 Pa. at 113; 425 A.2d at 392 referring to Commonwealth v. Evans, 489 Pa. 85, 413 A.2d 1025 (1980).
>
> The Gribble Court subsequently recognized that Pa.R.E. 803(25)(E) serves as a recognized exception to the hearsay rule. Rule 803(25)(E) allows a hearsay statement to be admitted where it is made by a defendant's co-conspirator "during and in furtherance of the conspiracy." The Gribble Court further noted that "the U.S. Supreme Court and this Court had recognized that statements admitted under the co-conspirator exception to the hearsay rule do not violate the Sixth Amendment." Gribble, 580 Pa. at 664, 863 A.2d at 465; see also United

29

States v. Bourjaily, 483 U.S. 171, 183-84, 107 S. Ct. 2775, 2783, 97 L. Ed. 144 (1987). Accordingly, the Sixth Amendment protections originally explained in Bruton were not applicable in Gribble as a result of the available co-conspirator hearsay exception provided in Pa.R.E. 803(25).

We similarly conclude herein that the out-of-court statements of the co-defendant Cowher are admissible in a joint trial of the two (2) defendants pursuant to Pa. R.E. 803(25)(E). The out-of-court statements in question were made prior to completion of the alleged conspiratorial act, i.e., election fraud. The statements were also made in furtherance of the alleged common design of the conspiracy, i.e., to commit election fraud in the Wild Acres community general election in May 2014. In accordance with our Supreme Court's interpretation of Bruton and its progeny as set forth above and the applicability of Pa.R.E. 803(25)(E) herein, as well as in exercising this [c]ourt's discretion to effectuate judicial economy, a joint trial of [Appellant] and his co-defendant is proper.

(Id., at 15) (quoting Trial Court Opinion and Order, 3/7/16, at unnumbered 4-6). We cannot say that the state court's application of its own rules of evidence was "contrary to" or involved an unreasonable application of clearly established case law; see 28 U.S.C. § 2254(d)(l); or "based upon an unreasonable determination of the facts." See 28 U.S.C. § 2254(d)(2). Nor can it be said that trial counsel's performance in not objecting to these statements was unreasonable, given that these statements were admissible exceptions to the hearsay rule.

Moreover, even applying an independent assessment of Strickland to those claims which do not benefit from the state court's rulings, Kuperschmidt's claims fail. As previously noted, to prevail on a claim of ineffective assistance of counsel,

a petitioner must establish that: (1) the performance of counsel fell below an objective standard of reasonableness; and (2) that, but for counsel's errors, the result of the underlying proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 691-92 (1984). At the outset, Strickland requires a petitioner to "establish first that counsel's performance was deficient." Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). This threshold showing requires a petitioner to demonstrate that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. Id. Additionally, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Id. However, in making this assessment "[t]here is a 'strong presumption' that counsel's performance was reasonable." Id. (quoting Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996)). On this score, we presume trial counsel's actions were part of a sound trial strategy, unless the petitioner can disprove this fact or show that such strategy was unsound.

At the outset, any argument by petitioner that his trial counsel was ineffective for failing to object to the admission of alleged hearsay evidence is without merit. Indeed, our review of the record and applicable law confirms that the challenged testimony was admissible under Pennsylvania law. And, according to the Third Circuit, "if there is no merit to [a defendant's] claims that the prosecution's statements and [testimony] should not have been permitted at trial, his counsel

cannot be deemed ineffective for not having objected to their presentation, as it was not unreasonable for him to acquiesce in the presentation of proper statements and testimony." Hartey v. Vaughn, 186 F.3d 367, 372 (3d Cir. 1999).

As previously explained, the state court held that the statements made by Cowher regarding his conversations with DePaolis were exceptions to the hearsay rule as co-conspirator statements and were therefore admissible.[3] As to the testimony of Trooper Orlando regarding his conversations with DePaolis and how he came to focus his investigation on Kuperschmidt, these statements were admissible under Pennsylvania law as statements offered to explain the course of police conduct, which are not offered for the truth of the matter asserted. As has been well-settled by the Pennsylvania Supreme Court:

> Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. Commonwealth v. Puksar, 559 Pa. 358, 740 A.2d 219, 225 (1999). The rule against admitting hearsay evidence stems from its presumed unreliability, because the declarant cannot be challenged regarding the accuracy of the statement. Commonwealth v. Rush, 529 Pa. 498, 605 A.2d 792, 795 (1992). But it is well established that certain out-of-court statements offered to

---

[3] In his supplemental brief, the petitioner also challenges the testimony of DePaolis in which he testified that his understanding was that when Kuperschmidt stated in the recording "The other thing, talk to Nona what I told you." He understood it to mean something other than what was going on with the election. He argues DePaolis testified what he believed petitioner's state of mind was without establishing a foundation. However, in our view, these statements show only DePaolis's interpretation of the non-hearsay statements by Kuperschmidt. Moreover, it is unclear how these statements could have prejudiced Kuperschmidt since DePaolis confirms he was not referencing anything to do with the election.

> explain the course of police conduct are admissible because they are offered not for the truth of the matters asserted but rather to show the information upon which police acted. Commonwealth v. Jones, 540 Pa. 442, 658 A.2d 746, 751 (1995); Commonwealth v. Yates, 531 Pa. 373, 613 A.2d 542, 543 (1992); Commonwealth v. Palsa, 521 Pa. 113, 555 A.2d 808, 810 (1989); Commonwealth v. Cruz, 489 Pa. 559, 414 A.2d 1032, 1035 (1980). The trial court, in exercising discretion over the admission of such statements, must balance the prosecution's need for the statements against any prejudice arising therefrom. See Jones, 658 A.2d at 751; Yates, 613 A.2d at 543–44; Palsa, 555 A.2d at 811.

Com. v. Chmiel, 585 Pa. 547, 600–01, 889 A.2d 501, 532–33 (2005). After reviewing the testimony challenged by the petitioner with regard to Trooper Orlando's investigation, we do not find trial counsel was ineffective for failing to object to these statements. At the outset, as the petitioner admits, this testimony is simply background information to explain to the jury how Kuperschmidt came to be a target of the investigation; an investigation which ultimately resulted in taped recordings between Kuperschmidt and DePaolis that were played at trial. Moreover, the declarants of the statements about what led to the investigation into Kuperschmidt, District Attorney Tonkin and DePaolis, both testified at trial and were available to be cross-examined about the statements they made to Trooper Orlando.

Nor are we persuaded by the petitioner's argument that trial counsel was ineffective for stating in the opening statement that petitioner would testify. The petitioner does not challenge his decision not to testify. Indeed, that decision was

made willingly by the defendant as confirmed by the colloquy conducted by the court during the proceedings. (Doc. 41-1, at 571-73). Moreover, the record demonstrates that the decision by Kuperschmidt not to testify was a sound strategy of trial counsel based on the "the way [the] trial went and some of the cross-examination he would have to be subjected to with respect to his tape." (Doc. 41-1, at 569). It also appears that trial counsel went through every effort to remedy the effects of his statements regarding Kuperschmidt testifying, including presenting character witnesses to make up for the gaps in what his testimony would have shown, (Id., at 575-85), and by requesting a motion *in limine*[4] to preclude the Commonwealth from commenting on his opening statement about Kuperschmidt testifying. (Id., at 595).

Nonetheless, it is without question that a promise by trial counsel in an opening statement to produce evidence that is not produced at trial may be problematic and, in some instances, can constitute ineffective assistance of counsel. As the Third Circuit has stated:

> The rationale for holding such a failure to produce promised evidence ineffective is that when counsel primes the jury to hear a different version of the events from what he ultimately presents, one may infer that reasonable jurors would think the witnesses to which counsel

---

[4] The court denied the motion but instructed counsel to "address it factually in the sense of that what is said in an opening statement is not evidence," without crossing the line to an inference of guilt. (Doc. 41-1, at 598-99).

> referred in his opening statement were unwilling or unable to deliver
> the testimony he promised.

McAleese v. Mazurkiewicz, 1 F.3d 159, 166–67 (3d Cir. 1993) (citing Anderson v.

Butler, 858 F.2d 16, 18 (1st Cir. 1988), aff'd sub nom. Com. V. Anderson, 408 Mass.

803, 563 N.E.2d 1353 (1990)). Indeed, other circuits have found that, in certain

circumstances, counsel may be ineffective for stating in an opening statement that

the defendant would testify when the defendant did not ultimately do so. See Ouber

v. Guarino, 293 F.3d 19, 27 (2002). But these cases often hinged on the jury hearing

a different version of events than that which was promised. See Harris v. Reed, 894

F.2d 871, 873-74 (7th Cir. 1990) (failure of defense counsel to put on any witnesses

in support of a viable theory of defense "left the jury free to believe [the informant's]

account of the incident as the only account," and, "primed the jury to hear a different

version of the incident. When counsel failed to produce the witness to support his

version, the jury likely concluded that counsel could not live up to the claims made

in the opening."); Anderson v. Butler, 858 F.2d 16, 17-19 (1st Cir.1988) (Sixth

Amendment violation where counsel failed to present promised expert medical

testimony that defendant had acted without cognizance of, or feeling for, actions).

But this view is confined "where the promise is more general in nature, and/or

where the testimony to be provided would not be significant or was elicited through

other means, courts may defer to counsel's reasonable decision to change course."

United States v. Crawford, 680 F. Supp. 2d 1177, 1197 (E.D. Cal. 2009) (citing U.S.

ex rel. Schlager v. Washington, 887 F. Supp. 1019, 1026 (N.D. Ill. 1995), aff'd sub nom. Schlager v. Washington, 113 F.3d 763 (7th Cir. 1997)). Indeed, the Third Circuit has explained that "backing off of a promise to give certain evidence is unlikely to support an ineffective assistance claim when there are changed circumstances, because 'unexpected developments sometimes may warrant changes in previously announced trial strategies.'" Elias v. Superintendent Fayette SCI, 774 F. App'x 745, 751 (3d Cir. 2019) (quoting Ouber, 293 F.3d at 29). Indeed, in Elias, the Third Circuit held that the decision that the defendant should not testify despite the promise in the opening statement that he would was a sound trial strategy based upon the unexpected testimony of two other witnesses supporting his claim. Id.

Here, a review of the opening statement by trial counsel reveals that he made minimal, general statements about what Kuperschmidt's testimony would reveal. He first promised that Kuperschmidt would testify about his background and personal life and why he decided to move from Brooklyn to Wild Acres. He also stated that he will testify to what his job on the Board of Directors entailed. But the balance of the opening statement, specifically with regard to the evidence showing that Kuperschmidt was unaware of the fraudulent voting scheme stated only generally "you will hear evidence" or "you will hear testimony" but did not directly reference any anticipated testimony by Kuperschmidt. The evidence demonstrates that trial counsel promised to have him testify only to humanize him to the jury and was not

36

the lynchpin of his merits argument. Instead, the trial transcript demonstrates that trial counsel substituted character witnesses to discuss the background information he had previously stated Kuperschmidt would testify to. (Doc. 41-1, at 600). Thus, although the jury could have anticipated some testimony from Kuperschmidt, the absence of his testimony alone did not undermine any previously promised defense. More importantly, it is well documented that trial counsel made a strategic choice, based upon unexpected developments in the trial testimony and the danger of him being cross-examined on the recordings to advise the petitioner not to testify and the petitioner made the independent choice not to testify. Further, it appears that at the time of trial the petitioner agreed with this tactical choice. This tactical choice is not entirely unreasonable given the risks presented by the potential cross-examination of Kuperschmidt on his recorded statements played at trial.

Finally, the petitioner has failed to show that he was prejudiced by any alleged errors made by trial counsel or that they resulted in a different outcome at trial. Indeed, in weighing the sufficiency of evidence of his conviction on direct appeal, the Superior Court illuminated the evidence supporting the petitioner's attempt convictions:

> Relying on accomplice liability, the trial court disposed of Appellant's sufficiency challenge to the attempt convictions with the following analysis:

Here, [Appellant] was convicted on numerous Counts of Criminal Attempt to Commit Forgery (F-3) under 18 Pa.C.S. § 4101(2), numerous Counts of Criminal Attempt to Commit Identify Theft (F-3) under 18 Pa. C. S. § 4120(a), and numerous Counts of Criminal Attempt to Commit Tampering with Records or Identification (M-1) under 18 Pa.C.S. § 4104(a), [Appellant's] convictions rested on his liability as an accomplice to his co-Defendant, Cowher.

At trial, the Commonwealth presented the PSP recording in which [Appellant] was informed by DePaolis over the phone that Cowher was coming into the office "to take care [of] the ballots" and that DePaolis was "a little nervous about it." See Commonwealth Exhibit 1. [Appellant] responded by saying, "Don't be nervous about it." I didn't know nothing about it. Me and Myron already agreed." Id. [Appellant] went on to tell DePaolis to "relax" and assured him they were "still gonna win no matter what." Id. In addition, [Appellant] suggested that DePaolis turn off the cameras on the office while Cowher was filing out the ballots. Id.

The PSP recording clearly shows that [Appellant] was fully aware and supportive of Cowher's intention to fill out all of the S.O.S. ballots and commit fraud. Specifically, [Appellant's] suggestion that DePaolis should turn off the cameras shows his intent to promote and aid or agree in Cowher's attempt to fraudulently file [sic] out the S.O.S. ballots. Given this evidence, a reasonable fact-finder could conclude that the verdicts on all the attempt charges were correct and that there was sufficient evidence to support the jury's conclusions of fact.

Trial Court Opinion, 1/3/17, at unnumbered 17-18. Notably, Appellant makes no mention of, let alone argument against, his liability as Cowher's accomplice. Appellant's Brief at 20-26. Additionally, viewing all of the evidence in the light most favorable to the Commonwealth, we discern no basis on which to disturb the trial court's findings, which

are supported by the record, or its legal conclusion, which is supported by statutory and case law.

(Doc. 41-2, at 23). We agree with the state court that the most compelling evidence against Kuperschmidt at trial were his own statements captured on these recordings seemingly confirming his participation in the election fraud scheme. Thus, we are not persuaded that the testimonial background evidence to which Kuperschmidt objects nor any inference which may have been drawn from trial counsel's statements regarding him testifying at trial, would have changed the outcome in his favor. Thus, this ineffectiveness claim fails on both prongs of the Strickland test since Kuperschmidt has shown neither constitutionally deficient conduct by counsel, nor demonstrable prejudice to the petitioner.

Nor should a certificate of appealability issue in this case. Under 28 U.S.C. § 2253(c)(2), a court may not issue a certificate of appealability unless "the applicant has made a substantial showing of the denial of a constitutional right." In other words, a certificate of appealability should not issue unless "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). In the instant case Kuperschmidt has made no such showing, nor can he. Rather, Kuperschmidt's claims are both meritless and procedurally defaulted. Therefore, we will decline to issue a certificate of appealability.

## IV. **Conclusion**

Accordingly, for the foregoing reasons, we conclude that the Petition for Writ of Habeas Corpus should be DENIED and that a certificate of appealability should not issue. An appropriate order follows.

Submitted this  14th day of January 2025.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge